IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| MERCED COUNTY, CALIFORNIA,<br>a political subdivision of the<br>State of California,<br>222 M Street,<br>Merced, CA 95340<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC HOLDER,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | <br><br><br><br><br><br><br><br><br><br><br>Civil Action No. _____<br><br><br><br><br>Three-Judge Court Requested |

**COMPLAINT FOR DECLARATORY RELIEF**
**UNDER SECTION 4 OF THE VOTING RIGHTS ACT**

The Plaintiff, Merced County, alleges that:

    1.    This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 2201, 42 U.S.C. § 1973b, and 42 U.S.C. § 1973*l*(b).

    2.    Plaintiff Merced County ("County") is a political subdivision of the State of California. The County covers approximately 1,935 square miles and is located in California's Central Valley. The County is a "covered jurisdiction," meaning that it is subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c.  42 U.S.C. § 1973b(a)(1); 28 C.F.R. § 51.2.

3. The County was formed in 1855. There are currently six incorporated cities within the boundaries of Merced County: Merced, Atwater, Dos Palos, Gustine, Livingstone, and Los Banos. These cities are not agencies of the County, subject to its control; they have independent authority under the California Constitution, subject only to the general law of the state. (Cal. Const. art. XI, §§ 2, 5 & 7.)

4. The County also has 22 school districts, and over 60 special districts wholly or partially within its boundaries. These school districts and other special districts are agencies of the State of California and are not subject to County control. They are governed by state law, and not by County ordinances. California is not a "covered jurisdiction" subject to Sections 4 and 5 of the Voting Rights Act.

5. As of the November 2010 general election, there were 95,494 registered voters in the County. This represents approximately 75.5 percent of the 128,215 citizens of voting age in the County, as reflected in the Census Bureau's special tabulation. Of these registered voters, approximately 34.8% have Spanish surnames.

## MERCED COUNTY'S COVERAGE UNDER SECTIONS 4 AND 5 OF THE VOTING RIGHTS ACT

6. When Congress enacted the Voting Rights Act of 1965, it determined that racial discrimination in voting had been especially prevalent in certain areas of the country. Section 4(a) of the Act (42 U.S.C. § 1973b) established a formula to identify those areas and to provide for more stringent remedies where appropriate. The jurisdictions identified by the formula were then subjected to a two-part remedy: the first part was a five-year suspension of the use of any "test or device" (such as a literacy test), as a prerequisite to register to vote. The second was the requirement for review ("preclearance") under Section 5 of any change affecting voting made by a covered

jurisdiction either by the United States District Court for the District of Columbia or by the Attorney General.

7. The coverage formula as enacted in 1965, and as subsequently amended in 1970 and 1975, contained two prongs, both of which had to be met to subject a jurisdiction to the preclearance requirement. The first prong in the preclearance coverage formula was whether, at the presidential election immediately preceding the enactment/amendment of the Act, the state or a political subdivision of the state maintained a "test or device" restricting the opportunity to register and vote. The second prong of the preclearance coverage formula was satisfied if the Director of the Census determined that less that 50 percent of persons of voting age were registered to vote, or actually voted, at the presidential election immediately preceding the Act's enactment/amendment.

8. The result of Congress's decision to state the coverage formula in the foregoing terms was that some jurisdictions—like Merced County—were captured within the coverage formula that did not have a history of racial discrimination. Nothing in the legislative record reflects that Merced County, or anywhere in California for that matter, was a target of these special provisions of the Voting Rights Act.

9. The first "coverage" prong was met through no fault of the County's but entirely as a result of California state law. Merced County never had any "test or device" of its own. The State of California, however, had a literacy test that had been on the books since 1894. The California Supreme Court struck down that literacy test as unconstitutional in 1970, and it was not thereafter enforced.[1] It was not formally repealed

---

[1] *See Castro v. State of Cal.,* 2 Cal. 3d 223 (1970).

by the voters, however, until November 7, 1972—six days after the trigger date for Merced County's coverage.  Then, in 1975, the phrase "test or device" was broadened to include the practice of providing election information, including ballots, only in English in states or political subdivision where members of a single language minority constituted more than five percent of the citizens of voting age.   Merced County met this test too, again through no fault of its own. Registration and voting was then—as now—governed by state law, which contained no provision for election materials to be in languages other than English.  In addition, Merced County's "language minority" population constituted more than five percent of the citizens of voting age.  Though California law governed the languages in which voting materials were provided, the State was not covered.

        10.    Merced County was not subject to the special provisions of the Voting Rights Act in 1965 and 1970 because it did not meet the second prong of the preclearance coverage formula in each of those years; more than 50 percent of persons of voting age were registered to vote, or actually voted, at the presidential election immediately preceding the Act's enactment/amendment.  However, in November 1972 the voter participation figure for Merced County fell barely under 50%, with 49.6% of the County's eligible voters voting in the 1972 presidential election.  The result was coverage under Section 5 of the Voting Rights Act.

        11.    The main reason that Merced County met the second prong of the preclearance formula was that the County had a large transitory population in 1972: military personnel living in Castle Air Force Base.  In making its determination under section 4, the Census Bureau treated those military personnel as eligible voters in Merced County, even though the U.S. Department of Defense encouraged them to vote in their

legal places of residence (outside Merced County, in most cases).  Not surprisingly, voter turnout in the two precincts covering Castle Air Force Base fell well below the 50% threshold, dragging down the County's voter turnout percentages.  The Bureau's calculation of voter turnout made no adjustment for temporary military personnel.  If that adjustment had been made by excluding the two precincts covering Castle Air Force Base, more than 50% of eligible voters in Merced County voted in the November 1972 presidential election.[2]  Had this adjustment been made, Merced County would not have been covered under Section 5.

12. The Bureau's calculations also suffered from certain methodological errors that led it to overestimate the number of "eligible" voters in the County.  However, the Bureau's coverage determination was not appealable.  42 U.S.C. § 1973b(b).[3]

### MERCED COUNTY IS ELIGIBILE TO BAILOUT OF SECTION 5 COVERAGE

13. Since its inception in 1965, the Voting Rights Act has allowed covered States, and covered counties in States that are not covered, to seek a judicial decree exempting them from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act.  This exemption process is known as "bailout."

---

[2] The population of Castle AFB was even more transitory than most military bases, because it was a training base.

[3] While Congress was considering The Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act Reauthorization and Amendments Act of 2006 ("VRARA"), the County of Merced sent an extensive letter to the House Judiciary Committee, explaining the circumstances leading to the County's coverage in 1972, and requesting that bailout be extended to enable jurisdictions that could prove they were only covered due to the inclusion of military voters in the eligible voter base to bailout. Congress did not make any changes to the bailout provisions of the Act in 2006.

14. In 1982, Congress made changes in the exemption standards of the Voting Rights Act. As amended in 1982, Section 4 of the Voting Rights Act provides that political subdivisions that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
>
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
>
> C) no Federal examiners have been assigned to the political subdivision;
>
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. §1973c; and
>
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

15. Section 4(a) of the Voting Rights Act further provides the following additional requirements to obtain bailout:

> To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. (42 U.S.C. § 1973b(a)(2));

> No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. (42 U.S.C. § 1973b(a)(3));
>
> The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices . . . . (42 U.S.C. § 1973b(a)(4)).

16.     As described herein, Plaintiff County and its political subdivisions have fully complied with the provisions of Section 4 of the Act.

17.     As a covered jurisdiction, Plaintiff County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the 'preclearance' provisions, covered jurisdictions, including County, is required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

18.     In the ten years preceding the filing of this action, County has made numerous preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. At the time of the filing of this complaint, there is currently no submission pending with the United States Department of

7

Justice seeking preclearance for any voting change adopted or administered by Plaintiff County or any political subdivisions within the County.

19.     Within the ten years preceding the filing of this action, County has diligently endeavored to comply with Section 5 preclearance requirements. Any oversights that occurred in the County's preclearance practices during the past 10 years were few, inadvertent, and were "trivial, were promptly corrected, and were not repeated." 42 U.S.C. § 1973b(a)(3).  Additionally, the County has been proactive in seeking preclearance of historical voting changes by independent, self-governing cities, school districts and special districts within its boundaries, again going back decades.  The Attorney General has only once interposed a Section 5 objection to a change affecting voting in the County, and that change was more than 20 years ago—to the County's 1991 supervisorial redistricting plan; the objectionable supervisorial redistricting plan was promptly revised, and the new plan received preclearance.

20.     Voter registration opportunities in Merced County are readily and equally available to all citizens.  No person in the County has been denied the right to vote on account of race, color, or membership in a language minority group for at least the preceding ten years.

21.     The County has never had a "test or device" of its own, as defined in the Voting Rights Act (42 U.S.C. § 1973b(c)) as a prerequisite to either registering or voting. It has not administered the State's literacy test since that test was declared unconstitutional by the California Supreme Court in 1970, and the State and County have provided bilingual voting materials, as required by section 203 of the federal Voting Rights Act, 42 U.S.C. § 1973aa-1a, since at least 1976.  The County's bilingual voting

8

protocols have received preclearance. There is no other law in effect in California, or in Merced County, that constitutes a "test or device" as defined in § 1973b(c).

22. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in the County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against the County alleging such denials or abridgments of the right to vote.

23. During the last ten years at least, no voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

24. The Plaintiff County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in the County are not being denied an equal opportunity to elect candidates of their choice to any office in the County.

25. Federal examiners have never been appointed or assigned to the County under Section 3 of the Voting Rights Act, 42 U.S.C. § 1973a.

26. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in the County within the last ten years, the County has not had any occasion to take any action eliminating such activity.

27. Pursuant to 42 U.S.C. § 1973b, the County has "publicize[d] the intended commencement … of [this] action in the media serving [the County] and in the appropriate United States post offices" in the following locations:

- 9249 E Broadway St, Planada, CA 95365-9998
- 2334 M St, Merced, CA 95340-9998
- 415a W 18th St, Merced, CA 95340-9997
- 13201 Jefferson St, Le Grand, CA 95333-9998
- 1599 Broadway Ave, Atwater, CA 95301-9998
- 6514 N Winton Way, Winton, CA 95388-9998
- 15906 Lewis St, Snelling, CA 95369-9998
- 10366 S Highway 59, El Nido, CA 95317-9998
- 9211 Cressey Way, Cressey, CA 95312-9998
- 1444 B St, Livingston, CA 95334-9998
- 11224 Santa Fe Dr, Ballico, CA 95303-9998
- 16096 Locust St, Delhi, CA 95315-9998
- 20085 3rd Ave, Stevinson, CA 95374-9998
- 19948 1st St, Hilmar, CA 95324-9998
- 1555 Golden Gate Ave, Dos Palos, CA 93620-9998
- 8858 W M St, South Dos Palos, CA 93665-9998
- 1135 6th St, Los Banos, CA 93635-9998
- 316 5th St, Gustine, CA 95322-9998

28. The proposed bailout was the subject of a duly-noticed public hearing on April 27, 2010. At its meeting on July 27, 2010, following a second opportunity for public comment, the County Board of Supervisors unanimously voted to proceed with the bailout. No opposition to the bailout was stated at either hearing.

29. The allegations set forth in paragraphs 17 through 28 above, if established, entitle Plaintiff County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. § 1973b, exempting the County and all governmental units within the County from the special remedial provisions of the Voting Rights Act.

WHEREFORE, Plaintiff County respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973b, to hear the claims raised in Plaintiff's complaint;

B. Enter a declaratory judgment that Plaintiff County is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

**FOR THE PLAINTIFF MERCED COUNTY:**


/s/ J. Gerald Hebert
**J. GERALD HEBERT**
DC Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, Va. 22304
Tel (703) 628-4673
Email: hebert@voterlaw.com

**MARGUERITE MARY LEONI**
California State Bar No. 101696
**CHRISTOPHER ELLIOTT SKINNELL**
California State Bar No. 227093
Nielsen Merksamer
Parrinello Gross & Leoni, LLP
2350 Kerner Boulevard, Ste 250
San Rafael, CA 94901
Tel (415) 389-6800
Email: mleoni@nmgovlaw.com
Email: cskinnell@nmgovlaw.com