IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MERCED COUNTY, a political subdivision of the State of California, <br><br> Plaintiff, <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General Of the United States of America, and THOMAS E. PEREZ, Assistant Attorney General, Civil Rights Division, <br><br> Defendants. | Civil Action No. 1:12-cv-00354 <br> (TFH-DST-ABJ) <br> Three-Judge Court |

CONSENT JUDGMENT AND DECREE

1.	This action was initiated on March 6, 2012, by Plaintiff Merced County against Defendants Eric H. Holder, Jr., Attorney General of the United States, and Thomas E. Perez, Assistant Attorney General, Civil Rights Division (collectively "the Attorney General").

2.	Merced County ("the County") is a governmental subdivision organized under the constitution and laws of the State of California. The County is covered by the special provisions of the Voting Rights Act, based on a coverage determination under Section 4(b) made by the Attorney General and the Director of the Census, and published in the Federal Register. *See* 40 Fed. Reg. 43,746 (Sept. 23, 1975). By virtue of this coverage determination, Merced County and political subdivisions within its boundaries must receive preclearance under Section 5 of the Voting Rights Act for all changes affecting voting enacted or implemented after November 1, 1972.

1

3. In this action, the County seeks a declaratory judgment pursuant to Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), exempting it from coverage under Section 4(b) of the Act, 42 U.S.C. 1973b(b). Exemption under Section 4(b) would in turn exempt the County and the political subdivisions included within its boundaries from the preclearance provisions of Section 5, 42 U.S.C. § 1973c.

4. This three-judge district court is authorized by 28 U.S.C. § 2284 and 42 U.S.C. § 1973b(a)(5) and has jurisdiction over this matter.

5. Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through a declaratory judgment action in this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) both "during the ten years preceding the filing of the action" and "during the pendency of such action." 42 U.S.C. § 1973b(a)(1). The statutory conditions are:

> (A) no . . . test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race[,] color[, or language minority status];
>
> (B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race[,] color[, or language minority status] have occurred anywhere in the territory of such State or political subdivision . . . and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote;
>
> (C) no Federal examiners or observers under [the Voting Rights Act] have been assigned to such State or political subdivision;

> (D) such State or political subdivision and all governmental units within its territory have complied with [Section 5], including compliance with the requirement that no change covered by [Section 5] has been enforced without preclearance under [Section 5], and have repealed all changes covered by [Section 5] to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment;
>
> (E) the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under [Section 5] of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under [Section 5], and no such submissions or declaratory judgment actions are pending;
>
> (F) such State or political subdivision and all governmental units within its territory – (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under [the Voting Rights Act]; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process.

42 U.S.C. § 1973b(a)(1)(A)-(F).

      6.     Section 4(a) provides three additional requirements for bailout:

> To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation.

42 U.S.C. § 1973b(a)(2).

> No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws

3

> of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated.

42 U.S.C. § 1973b(a)(3).

> The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices.

42 U.S.C. § 1973b(a)(4).

7. Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)] . . . ." 42 U.S.C. § 1973b(a)(9).

8. The Attorney General has conducted a comprehensive and independent investigation to determine the County's eligibility for bailout. Department of Justice attorneys have interviewed numerous members of local communities and reviewed a substantial quantity of documentary evidence, including background information, demographic data, voter registration records, the preclearance submissions of the County and the subjurisdictions within its boundaries, and minutes of the Merced County Board of Supervisors and the governing body of every city, school district and special district within the County that has conducted an election in the prior decade.

9. The Attorney General and Merced County agree that the County has fulfilled the conditions required by Section 4(a) and is entitled to the requested declaratory judgment

4

exempting it from Section 5 coverage. Accordingly, the County and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree.

## AGREED STIPULATIONS

10. Merced County is a county in the State of California.

11. Merced County is located in the San Joaquin Valley, due east of the cities of San Jose and Santa Cruz, and extends from the Diablo Range on the west to the foothills of the Sierra Nevada Mountains on the east.

12. Merced County was formed in 1855 through division of Mariposa County, the remainder of which lies to the east. The County's current boundaries are set out in section 23,124 of the California Government Code.

13. Merced County contains some 84 other political subdivisions, including cities, school districts and special districts, that conduct elections (though some are presently inactive).

14. The 2010 Census concluded that Merced County had a population of 255,793, which included 140,485 Hispanic persons (54.9%), 81,599 Non-Hispanic White persons (31.9%), 19,353 Non-Hispanic Asian persons (7.6%), 9,669 Non-Hispanic Black persons (3.8%), and 2,141 Non-Hispanic American Indian persons (0.8%).[1]

15. The 2010 Census also concluded that Merced County had a voting-age population of 175,095, which included 86,404 Hispanic persons (49.4%), 65,220 Non-Hispanic White persons (37.2%), 13,303 Non-Hispanic Asian persons (7.6%), 6,771 Non-Hispanic Black persons (3.9%), and 1,684 Non-Hispanic American Indian persons (1.0%).

---

[1] Racial categories of 2010 census data are aggregated pursuant to the guidance issued by the Office of Management and Budget, OMB Bulletin 00-02 (Mar. 9, 2000), and the Department of Justice, 76 Fed Reg. 7470, 7472 (Feb. 9, 2011); 66 Fed Reg. 5411, 5414 (Jan. 18, 2001).

16. The 2006-2010 American Community Survey estimated that Merced County had a citizen voting-age population of 133,427, which included 64,730 Non-Hispanic White persons (48.5%), 51,228 Hispanic persons (38.4%), 7,150 Non-Hispanic Asian persons (6.4%), 6,735 Non-Hispanic Black persons (5.0%), and 1,708 Non-Hispanic American Indian persons (1.2%).

17. The 2010 American Community Survey estimated that Merced County had a citizen voting-age population of 136,922, which included 63,275 Non-Hispanic White persons (46.2%) and 54,712 Hispanic persons (40.0%).

18. Merced County is governed by a five-member board of supervisors. Each supervisor is elected from a single-member district. Supervisors are elected to four-year terms under a non-partisan majority-vote system; in the absence of a majority vote in the June primary, the top two candidates continue to a November run-off. Elections are staggered so that two or three supervisors' terms expire every two years, and elections occur in even numbered years.

19. On April 3, 1992, the Attorney General objected under Section 5 of the Voting Rights Act to the proposed redistricting plan for the Merced County Board of Supervisors. The County subsequently devised a new redistricting plan with a Hispanic majority district, to which the Attorney General did not object.

20. After the 1992 redistricting, Merced County elected its first Hispanic supervisor. This supervisor was elected in District 1, which was and continues to be majority-Hispanic. This supervisor retired in 2005, and a non-Hispanic candidate won the contest to fill this seat, defeating a Hispanic candidate. The supervisor from District 1 ran unopposed for reelection in 2008. Currently Merced County has no Hispanic supervisors. The voters in Merced County also elect a five-member Board of Education, which is an agency of the State of California. Each

Trustee of the Board of Education is elected from a single-member district.  There is currently one Hispanic person on the Board of Education.

21. The 2010 Census estimated that the six cities in Merced County had populations ranging from 4,950 to 78,958; in each city the Census found that Hispanics were the largest racial group.  The 2005-2009 American Community Survey estimated that Hispanics were the largest group within the citizen voting-age population only in Dos Palos, Livingston, and Los Banos, although they constituted over thirty percent of the citizen voting-age population in Gustine and Merced as well.   Currently the cities of Gustine and Livingston have Hispanic persons on their city councils.  During the last ten years, an Hispanic person has been a member of the City Council of the City of Merced, and for many years the Mayor of the City of Atwater was an Hispanic person.

22. Elections in Merced County – including voter outreach, list maintenance, voter registration, and the selection of polling sites – are administered by the County.  Voter registration is unitary in the State of California, so that: registering to vote once will register voters for federal, state, county, municipal, and special district elections.  The opportunity to register to vote is available in Merced County through a variety of offices and programs, and through mail-in applications available in English and Spanish.

23. Merced County maintains records on which of its poll workers are bilingual in English and Spanish.  During the 2010 general election, bilingual assistance was available at all polling places, with one or more bilingual poll workers physically present at the majority of polling locations.  Ballots, sample ballots, and all signage are presented in both English and Spanish.  Merced County commits to undertake continued efforts to recruit bilingual poll workers to serve in polling places throughout the County in future elections.

24.     As of November 2010, Merced County had 93,271 registered voters, 68.1% of the 2010 ACS estimate of total citizen voting-age population.  32,428 of those voters had Spanish surnames, 59.3% of the 2010 ACS estimate of Hispanic citizen voting-age population.

25.     As of November 2008, Merced County had 92,035 registered voters, 69.0% of the 2006-2010 ACS estimate of total citizen voting-age population.  31,113 of those voters had Spanish surnames, 60.7% of the 2006-2010 ACS estimate of Hispanic citizen voting-age population.

26.     As of November 2006, Merced County had 92,824 registered voters, of whom 29,970 had Spanish surnames.  In November 2004, Merced County had 99,077 registered voters, of whom 30,765 had Spanish surnames.  Finally as of November 2002, Merced County had 97,027 registered voters, of whom 29,189 had Spanish surnames.

27.     Merced County has engaged in constructive efforts to increase minority participation in elections, including expanded opportunity for convenient voter registration, Spanish-language outreach, and early voting sites in areas accessible to the Hispanic community.

28.     In 2006, Merced County and a number of political subdivisions in the County were sued under Section 5 of the Voting Rights Act, by private plaintiffs seeking an injunction against enforcement of allegedly unprecleared voting changes.  *See Lopez* v. *Merced County*, (E.D. Cal.).  Plaintiffs did not obtain a judgment against the County or any political subdivisions in the County in that action.  The parties agree that the *Lopez* action does not bar bailout by the County or political subdivisions in the County.

29.     Merced County has undertaken significant efforts to bring the County and political subdivisions in the County into full compliance with Section 5 of the Voting Rights Act.  The Attorney General has received 252 submissions on behalf of the County and political

subdivisions in the County during the ten years preceding this action.  These submissions include the 2011 redistricting plan for the County Board of Supervisors.  Some recent submissions were made after the Attorney General reviewed the records of the County and the political subjurisdictions in the course of considering the County's bailout request and advised that it appeared that several potential voting changes had not previously been submitted to the Attorney General over the preceding ten years.  This review also determined that the failure to make such submissions prior to implementation was inadvertent or based on a good faith belief the changes were not covered by Section 5 and was not the product of any discriminatory reason.  Upon notice from the Attorney General, the County ensured that these matters were promptly submitted for review under Section 5, and the Attorney General interposed no objection to these changes.

30.     The County publicized its intent to commence this action prior to the filing of the Complaint in this action.  *See* 42 U.S.C. § 1973b(a)(4).  On April 27, 2010, the Board of Supervisors held a public meeting regarding the County's consideration of filing a bailout suit.  Notices regarding this meeting were posted on the County's website in both English and Spanish.  On July 27, 2010, at a public meeting of the Board of Supervisors, the Board passed a resolution announcing the County's intention to seek to initiate Section 5 bailout.  Information regarding bailout, including the resolution passed by the Board of Supervisors, as well as a notice published on October 28, 2010, in the Merced County Times newspaper, is provided on the County's website in both English and Spanish. News articles about the County's efforts to qualify for bailout appeared in the Merced Sun Star on March 24 and 25, 2011.  The County has also publicized notice of the commencement of this action, and of this proposed settlement, prior to the filing of the Joint Motion for Entry of Consent Judgment and Decree.  *See* 42 U.S.C. §

1973b(a)(4). Specifically, the County posted notices in the U.S. Post Offices in the following locations:

    9249 E Broadway St, Planada, CA 95365-9998

    2334 M St, Merced, CA 95340-9998

    415a W 18th St, Merced, CA 95340-999713

    201 Jefferson St, Le Grand, CA 95333-9998

    1599 Broadway Ave, Atwater, CA 95301-9998

    6514 N Winton Way, Winton, CA 95388-9998

    15906 Lewis St, Snelling, CA 95369-9998

    10366 S Highway 59, El Nido, CA 95317-9998

    9211 Cressey Way, Cressey, CA 95312-9998

    1444 B St, Livingston, CA 95334-9998

    11224 Santa Fe Dr, Ballico, CA 95303-9998

    16096 Locust St, Delhi, CA 95315-9998

    20085 3rd Ave, Stevinson, CA 95374-9998

    19948 1st St, Hilmar, CA 95324-9998

    1555 Golden Gate Ave, Dos Palos, CA 93620-9998

    8858 W M St, South Dos Palos, CA 93665-9998

    1135 6th St, Los Banos, CA 93635-9998

    316 5th St, Gustine, CA 95322-9998

The notices were posted on March 1, 2012, in English and Spanish, and the County requested that the notice remain posted for 30 days. The notice was also published in English and Spanish in the Merced County Times on March 8, 2012. Also, a front page news article in

the Merced Sun Star on March 9, 2012, publicized the County's filing of the Complaint in this action.

31. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by Merced County, pursuant to Section 4(a)(9) of the Voting Rights Act. *See* 42 U.S.C. § 1973b(a)(9). The Attorney General's consent in this action is based upon his own independent factual investigation of the County's fulfillment of all of the bailout criteria and consideration of all of the circumstances of this case, including the views of citizens of Merced County and the absence of evidence of racial or language minority discrimination in the electoral process. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance and preventing the use of discriminatory voting practices would not be compromised by such consent.

## AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

32. Merced County and the political subdivisions in the County are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5, the County and its subjurisdictions are required to obtain preclearance either from this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date for Merced County.

33. During the ten years preceding the filing of this action and during the pendency of this action, no test or device, as defined in Section 4(c), 42 U.S.C. § 1973b(c), or as defined in Section 4(f)(3), 42 U.S.C. 1973b(f)(3), has been used within Merced County for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or language

minority status.  During the relevant time period there is also no indication that any person in Merced County has been denied the right to vote on account of race, color, or language minority status.  *See* 42 U.S.C. § 1973b(a)(1)(A).

34.     During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race, color, or language minority status have occurred anywhere within Merced County.  Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds.  No action is presently pending alleging such denials or abridgements of the right to vote.  *See* 42 U.S.C. § 1973b(a)(1)(B).

35.     During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to Merced County.  *See* 42 U.S.C. § 1973b(a)(1)(C).

36.     During the ten years preceding this action, and during the pendency of this action, Merced County and political subdivisions in the County made 252 administrative submissions to the Attorney General for review under Section 5, and the Attorney General did not object to any of these submissions.  As set forth above, Merced County or the political subjurisdictions inadvertently failed to submit, prior to implementation, certain voting changes to the Attorney General for review under Section 5.  There is no evidence that Merced County or the political subjurisdictions did not submit these matters prior to implementation for any improper reason.  Nor is there any evidence that implementation of such changes, which have now been precleared under Section 5, has had a discriminatory effect on voting that would contravene Congress' intent

in providing the bailout option to jurisdictions such as these.[2]  During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for Merced County or any of the political subjurisdictions to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, because no such objections or denials have occurred.  *See* 42 U.S.C. § 1973b(a)(1)(D).

37. During the ten years preceding this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of Merced County or the political subjurisdictions for administrative review under Section 5.  No such administrative submissions by or on behalf of Merced County or the political subjurisdictions are presently pending before the Attorney General.  Neither Merced County nor the political subjurisdictions have ever sought judicial preclearance from this Court under Section 5.  Thus, this Court has never denied Merced County or the political subdivisions a declaratory judgment under Section 5; nor are any such declaratory judgment actions now pending.  *See* 42 U.S.C. § 1973b(a)(1)(E).

38. During the ten years preceding the filing of this action, and during the pendency of this action, neither Merced County nor the political subdivisions have employed voting procedures or methods of election that inhibit or dilute equal access to the electoral process.  *See* 42 U.S.C. § 1973b(a)(1)(F)(i).

39. During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in elections in Merced County has been subject to intimidation or harassment in the course of exercising his or her rights protected under the Voting Rights Act.  *See* 42 U.S.C. § 1973b(a)(1)(F)(ii).

---

[2] This Court has granted bailout to other jurisdictions that have similarly implemented certain minor changes prior to Section 5 review.  *See, e.g.*, *Augusta County v. Gonzales*, No. 05-1885 (D.D.C. Nov. 30, 2005).

40. Over the preceding ten years, Merced County has engaged in a variety of constructive efforts, including efforts to expand the opportunity for registration and voting, such as expanding opportunities for convenient voter registration, appointment of bilingual poll officials, Spanish-language outreach, and early voting sites in areas accessible to the Hispanic community. *See* 42 U.S.C. § 1973b(a)(1)(F)(iii).

41. Merced County has presented available information regarding rates of voter registration and voter participation over time. *See* 42 U.S.C. § 1973b(a)(2).

42. During the ten years preceding the filing of this action, and during the pendency of this action, neither Merced County nor the political subjurisdictions have engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race, color, or language minority status. *See* 42 U.S.C. § 1973b(a)(3).

43. Merced County publicized the intended commencement of this action prior to its being filed, by placing advertisements in the local newspapers, all post offices located within the County, and on the County's website. The County has publicized a notice of the proposed settlement of this action, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree. *See* 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The plaintiff Merced County is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the plaintiff Merced County and the political subdivisions in the County are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. §

1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).  This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

    3.    Each party shall bear its own costs.

Entered this ___ day of _____, 2012.


_____
UNITED STATES CIRCUIT JUDGE


_____
UNITED STATES DISTRICT JUDGE


_____
UNITED STATES DISTRICT JUDGE

*Agreed and Consented To:*


 /s/ *J. Gerald Hebert*
J. Gerald Hebert
D.C. Bar No. 447676
191 Somervelle Street, Suite #405
Alexandria, VA 22304
Telephone:  (703) 628-4673
Facsimile:  (202) 736-2222
hebert@voterlaw.com

/s/ *Marguerite Leoni*
Marguerite Leoni
Christopher Skinnell
Nielsen Merksamer Parrinello
        Gross & Leoni LLP
2350 Kerner Boulevard, Suite 250
San Rafael, CA 94901
Telephone: (415) 389-6800
Facsimile:  (415) 388-6874

*Counsel for Plaintiff*
*Merced County*

Dated:  July 27, 2012

*Agreed and Consented To:*


THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

RONALD C. MACHEN JR.
United States Attorney
District of Columbia



/s/ *Michelle A. McLeod*  _
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
RISA BERKOWER
ANNA M. BALDWIN
DANIEL J. FREEMAN
MICHELLE A. McLEOD
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7259 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone:  (800) 253-3931
Facsimile:   (202) 307-3961

*Counsel for Defendants*
*Eric H. Holder, Jr.*
*Attorney General of the United States*
*and Thomas E. Perez,*
*Assistant Attorney General,*
*Civil Rights Division*

Dated:  July 27, 2012